JAMES POWELL, plaintiff in error, *vs.* BEVERLY D. PARKER, *et al.*, defendants in error.

1. An injunction will not be granted for fraud, unless the bill sets forth the specific acts of fraud upon which it is sought; a general allegation of fraud is insufficient.

2. An injunction will not be granted to restain the sale, by defendant, of his railroad stock, and the drawing of the dividends by him, on the ground that complainant holds his covenant of warranty of title to a lot of land, the title of which is in dispute, in an action of eject- ment, when the bill shows that the railroad stock and other property of the defendant, is of much greater value, than the sum for which he may become liable on his warranty, and there is no charge that he is beyond the jurisdiction of the Court, or that he is insolvent, and when no other sufficient equitable ground is stated in the bill.

3. When the Chancellor, on the bill being presented to him, ordered that the defendants show cause on a day mentioned, why an injunction should not be granted, and that *in the meantime* the defendants be enjoined, till the further order of the Court, and on the hearing, the Judge refused the injunctions: *Held*, that the temporary injunction expired of its own limitation when the injunction was refused at the hearing, and that no vitality could be given to it pending the proceed- ings in this Court, by bond given by complainant, which is claimed to operate as a *supersedeas* of the judgment refusing the injunction.

Equity. Injunction. Decided by Judge HARRELL. Randolph Superior Court. November Term, 1868.

Powell, by his bill, complained as follows : In 1862, Parker sold and conveyed to him a settlement of lands in Sumter county, Georgia, containing five hunderd acres, more or less, with valuable improvements, for $5,500 00 cash. Parker had been in possession of the land for several years, and put Powell in possession when the contract was made. Land lot No. 127, is part of this settlement, and between two other land lots therein, and the loss of No. 127 would greatly in- jure the place. When he bought, Parker told him that he was sued for No. 127, by Webb & Moore *et al.*, but assured him that there was no difficulty about a speedy and sure termination of the suit in his favor; that he would warrant the title, and attend to the whole matter. Powell knew nothing about said suit, but relied exclusively upon the state-

ments of Parker about it.   Parker neglects and refuses to defend the suit, saying he has lost all his property, and is unable to defend it, and has informed the attorney whom he had employed to defend it, that he need defend no longer. Powell does not know the result of that suit, and the plaintiff therein is about to make him a party to make him liable for mesne profits.

Powell is informed and believes that Parker has parted with most of his property which was subject to levy and sale, except his residence, and, if there should be a verdict for mesne profits against Powell, he would have no adequate common law remedy to reimburse himself.   "It is fraudulent in Parker to decline and to refuse to continue the defense of said ejectment, and in transferring of his property to defeat the equitable right" of Powell.   Powell is informed and believes that Parker owns shares in the South-Western Railroad Company to the amount of $15,000 00 or $20,000 00, which, by law, cannot be levied on and sold.   Therefore, he prays that Parker be enjoined from transferring his stock or receiving its dividends, and that said company be enjoined from recognizing such transfer, or paying the dividends.

The Chancellor ordered Parker and the company to show cause on a named day, why the injunction should not be granted, as prayed for, " and that in the meantime they and each of them abstain and desist from any and all interference or disposition of said railroad stock therein named, until the further order of the Court, under a penalty of $10,000 00 each."

The defendants demurred to the bill on the following grounds :   Because complainant claimed no interest, right or title present or prospective in said stock ; his redress at law is adequate ; there is no sufficient charge of fraud ; there is no averrment of present or anticipated insolvency ; no right of action has accrued to the complainant against Parker, etc.

The Court sustained the demurrer, thereby refusing the injunction.   The complainant's solicitor assigns said ruling as error.   It is stated that he claimed that by the original order, and by his *supersedeas* of the judgment of the Chan-

cellor, the temporary injunction was still subsisting, and averring that the Chancellor would not so hold, invoked the decision of this Court upon that point.

W. A. HAWKINS, for plaintiff in error.

WEST HARRIS, A. HOOD, for defendants in error.

BROWN, C. J.

1. This bill contains no specific charge of any particular acts of fraud, or fraudulent practices by the defendants, and in the absence of such specific allegations an injunction should not be granted for fraud perpetrated by the defendants, even in a case where the injury might be irreparable. If the complainant fears irreparable injury from the fraudulent acts of the defendants, he must set forth plainly and distinctly the grounds of his apprehension.

2. There is no charge in this bill that the defendant Parker is beyond the jurisdiction of the Court, or that he is insolvent. The allegation is, that Parker has parted with *most* of his property, which is subject to levy and sale, except his residence. This may be true, and he may still be abundantly solvent. The bill does not show how much property he had or how much is left after he has parted with most of it. The purchase-money of the entire tract of land is only $5,500, and the litigation about the title applies to but one lot—the most important one, it is said—but the damage in case of failure of title to that lot would be considerably less than the whole sum paid for the tract, consisting of several lots and parts of lots. In addition to the other property, whatever it may be, which it is admitted Parker owns, the bill states that he is the owner of $15,000 to $20,000 of the capital stock of the South-Western Railroad Company. This, without reference to his other property, is much more than enough to pay any damages that the complainant may expect to recover in case of a failure of the title to the lot of land in dispute.

The bill further alleges that the railroad stock, by law, is

not subject to levy and sale. This allegation seems to have been made without reference to section 2584 of the Revised Code, which provides that such shares may be levied on and sold, either under attachment or *fi. fa.*, in any county through which the railroad passes. We think the Judge did right in refusing to grant the injunction, as the bill sets up no sufficient equity to entitle the complainant to it.

3. In this case, the Judge ordered that the defendants show cause, on a certain day, why an injunction should not be granted, " and that in the meantime, they and each of them, abstain and desist from any and all interference or disposition of said railroad stock therein named, until the further order of this Court, under a penalty of ten thousand dollars each." It is claimed that this temporary injunction was such a judgment of the Court below, as may be continued in force till the hearing in this Court, by bond given to operate as a *supersedeas* of the judgment refusing the injunction. We think not. The temporary injunction expired of its own limitation when the Judge, on the hearing, refused to grant the injunction, and no further vitality could be given to it, nor was it continued in force pending the proceedings in this Court, by a *supersedeas* of the judgment refusing the injunction upon the hearing.

The writ of injunction is harsh remedy, and should only be granted in cases, where the parties applying for it show themselves clearly entitled to it under well settled rules of legal equity. Again, the Chancellor has a large legal discretion in granting, or refusing, or dissolving injunctions, which should not be controlled by this Court except in cases of manifest abuse of that discretion. Temporary injunctions are frequently granted by the Chancellor on an *ex parte* showing, to prevent supposed injuries till both sides can be heard. And it might work great mischief if they could be continued in force till a hearing in the Supreme Court, by virtue of the bill of exceptions, operating as a *supersedeas* of the judgment refusing the injunction on the hearing.

We do not think section 4203 of the Revised Code was intended to apply to orders of this character, or that they

are continued in force by the bill of exceptions operating as a *supersedeas*, when bond is given under said section. They are interlocutory orders of the Chancellor, which cease to operate when his order sets them aside. In this case, the Chancellor ordered that his judgment refusing the injunction "operate as a limit" to the temporary injunction, which had heretofore been granted to hold till the further order of the Court. We see no error in this. We hold that the temporary injunction ceased to operate from the time when said order was granted.

Judgment affirmed.